UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ROGER SHULER and CAROL SHULER,** | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Civil Action Number |
| v. | ) ) | **2:08-cv-1238-AKK** |
| **INGRAM & ASSOCIATES and NCO FINANCIAL SYSTEMS, INC.;** | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Before the court is Defendant NCO Financial Systems, Inc.'s ("NCO") Motion for Summary Judgment. Doc. 48.[1] Plaintiffs Roger and Carol Shuler ("plaintiffs," or, sometimes referred to by their individual names) have responded, (doc. 62), and NCO has replied. Doc. 68. Accordingly, this matter is ripe for determination by this court. NCO's motion is GRANTED, for reasons stated below.

### I. PROCEDURAL HISTORY

Plaintiffs commenced this action on July 12, 2008, (doc. 1), and filed an

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record.

amended complaint on November 3, 2009, (doc. 53), alleging that NCO (1) violated the Fair Debt Collection Practices Act ("FDCPA"); (2) unlawfully invaded their privacy; (3) recklessly and wantonly failed to train or supervise its employees; and (4) defamed them. Doc. 53.

## II. FACTUAL BACKGROUND[2]

On February 28, 2007, American Express placed a $10,537.30 debt in Roger Shuler's name with NCO for collection. Doc. 49 at 4. NCO attempted to collect the debt until July 5, 2007, when it forwarded the debt to defendant Ingram & Associates for collection. *Id.* at 5. During its attempt to collect the debt, NCO sent an initial collection letter to Shuler and called Shuler approximately 30 times over four months. *Id.* at 4. However, NCO only made contact with Shuler once. *Id.*; doc. 60-2 at 20. By Shuler's own testimony, the call lasted less than five minutes and did not, in his opinion, constitute an invasion of privacy. Doc. 60-2 at 20, 22. NCO never attempted to collect the account from Carol Shuler. Doc. 49 at 4. NCO did not report the account to the credit bureaus and made no attempt to

---

[2] Consistent with its obligation under Rule 56 of the Federal Rules of Civil Procedure, this court is construing the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. Thus, plaintiffs' evidence, to the extent not contradicted by the established record, is taken as true and all justifiable inferences are drawn in plaintiffs' favor. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007); *Sparks v. Phillips & Cohen Assoc., LTD*, 641 F. Supp. 2d 1234 n.1 (S.D. Ala. 2008). However, when plaintiffs' briefs stretch the facts and are contradicted by the tape recordings and transcripts plaintiff Roger Shuler made, the court will consider the tape recordings and transcripts as the authority.

collect the debt after it forwarded the account to Ingram & Associates ("Ingram"). *Id.* at 4-5.

Plaintiffs contend that Ingram is an agent of NCO, because Ingram is a part of NCO's "Attorney Network." Therefore, plaintiffs seek to hold NCO liable for Ingram's actions beginning on or after July 5, 2007. Doc. 62 at 5-6. The court accepts the agency fact as true and therefore analyzes NCO's motion based on NCO's and Ingram's conduct. In that regard, the court adopts and incorporates hereto the facts outlined in the companion memorandum opinion entered on Ingram's motion for summary judgment. Doc. 80.

### III.  SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden

then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## IV. LEGAL ANALYSIS

As shown below, plaintiffs fail to meet their burden of establishing that defendants violated their rights under the FDCPA and Alabama law. Accordingly, NCO is entitled to judgment as a matter of law on all claims.

### A. NCO did not violate the FDCPA.

NCO moves for summary judgment on the FDCPA claim solely on statute of limitations grounds. Viewing the facts in the light most favorable to plaintiffs, the court finds that a genuine issue of material fact exists on the agency issue and whether, as such, NCO is liable for Ingram's actions that extend beyond July 5, 2007. Therefore, summary judgment is not warranted on statute of limitations grounds. However, because plaintiffs' FDCPA claim against NCO is premised

entirely on the conduct of Ingram,[3] (*see* doc. 62 at 17-19), the court can address the merits of their FDCPA claim against NCO since plaintiffs have had an opportunity to respond to Ingram's motion for summary judgment. *See Celotex Corp.*, 477 U.S. at 326 ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all her evidence."). NCO is also due summary judgment for the reasons stated more fully in the court's opinion granting Ingram's motion, (doc. 80).

### B.   NCO did not invade plaintiffs' privacy.

Plaintiffs contend that NCO breached its privacy when Ingram employees engaged in conduct that was "abusive and invasive," and, specifically, attempted to "coerce" Carol Shuler into "payment arrangements." Doc. 62 at 23. Given that plaintiffs' claim is based solely on Ingram's conduct, the court adopts and incorporates its memorandum opinion granting Ingram summary judgment on the invasion of privacy claim. Summary judgment is warranted for NCO on the same grounds. Doc. 80. In short, Ingram's employees Tracy Mize and Jann Blalock did not engage in conduct that "exceed[ed] the bounds of reasonableness." *Black v.*

---

[3] The court notes that, unlike Ingram, plaintiffs are only pursuing FDCPA claims against NCO for alleged violations of §§ 1692d, 1692d(2), 1692d(5), and 1692g. Summary judgment is warranted on these claims in favor of NCO.

*Aegis Consumer Funding Group, Inc.*, 2001 WL 228062, at *5 (S.D. Ala. Feb. 8, 2001). Rather, they engaged in reasonable collection efforts, (*see Norris v. Moskin Stores, Inc.*, 132 So. 2d 321, 323 (Ala. 1961)), and did not impermissibly intrude upon the Shulers' solitude and seclusion (*see Sparks v. Phillips & Cohen Assoc., LTD*, 641 F. Supp. 2d 1234, 1253 (S.D. Ala. 2008)).

To the extent plaintiffs contend that NCO's own actions breached their privacy, the court finds that NCO's conduct does not rise to the level of harassment necessary to sustain an invasion of privacy claim. *See Sparks*, 641 F. Supp. 2d at 1253. NCO sent Shuler a letter, attempted to call him 30 times over a four-month period, never attempted to collect the debt from his wife, and only had a five-minute telephone conversation with him which even he admitted did not invade his privacy. Doc. 49 at 4-5; doc. 60-2 at 21-22. NCO's "actions were not so outrageous as to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Sparks*, 641 F. Supp. 2d at 1253.

**C. NCO did not recklessly and wantonly train and supervise its employees.[4]**

To establish a claim for negligent, reckless or wanton supervision, a plaintiff must show that "(1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice adequately." *Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009); *see also Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1070-71 (Ala. 2003) (demonstrating that for both negligent and reckless supervision, a plaintiff must properly allege tortious conduct). However, to sufficiently allege a claim of reckless or wanton training or supervision, as opposed to negligence, plaintiffs must demonstrate that NCO (or, construing the facts in favor of plaintiffs, Ingram as NCO's agent) had actual knowledge of an employee's tortious conduct – a higher bar than negligence's "knew or should have known" standard. *See Big B Inc. v. Cottingham*, 634 So. 2d 999, 1004 (Ala. 1993) (distinguishing reckless and wanton training and supervision from negligent training and supervision). Furthermore, wantonness

---

[4] Plaintffs' response argues a theory of negligent or wanton supervision and training, which is not a claim they pled before this court. Doc. 62 at 20. Because current amended complaint alleges reckless and wanton (rather than negligent) training and supervision, this court will not consider plaintiffs' arguments regarding negligent supervision and training.

requires actual knowledge by the employer that "injury is likely to result from his act or omission." *Id.*

To prevail, plaintiffs must establish that NCO's or Ingram's employees tortiously harmed them, that NCO had actual knowledge of that harm, and that NCO failed to address the situation. *See Edwards*, 603 F. Supp. 2d at 1357; *Big B*, 634 So. 2d at 1004. Plaintiffs cannot do so for two reasons. First, as discussed herein, plaintiffs have alleged no cognizable tort claim against NCO or Ingram. Therefore, their reckless and wanton training and supervision claim fails as a matter of law. Second, plaintiffs have provided no evidence that establishes NCO had knowledge of any wrongful conduct by any of its employees. In fact, by Roger Shuler's own testimony, NCO's employees engaged in no wrongful conduct. As for the actions of Ingram's employees, even if Jann Blalock and Tracy Mize engaged in tortious conduct, the claim against NCO still fails because plaintiffs have no evidence to establish that NCO had actual knowledge of this conduct. Plaintiffs contend only that Ingram is NCO's agent and that, as a result, NCO is liable for Ingram's conduct. *See* doc. 62 at 19; doc. 20 n.6. Mere agency, however, does not establish that NCO had knowledge of the alleged harm. Accordingly, the reckless and wanton supervision and training claim fails as a matter of law.

**D. NCO did not defame plaintiffs by publishing their debt to a credit bureau.**

Plaintiffs allege that NCO caused the publication of the alleged debt on Roger Shuler's credit report. *See* doc. 53 ¶ 37. However, in their opposition brief, plaintiffs accepted NCO's undisputed fact number 5 – *i.e.*, that NCO did not report the debt to a credit bureau, (doc. 62 at 5). Moreover, plaintiffs did not address the defamation claim in their opposition brief. Therefore, plaintiffs have abandoned this claim. Accordingly, summary judgment is warranted. *Chapman v. AI Trans.*, 229 F.3d 1012, 1027 (11th Cir. 2000) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *see also Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988) (defamation claim requires a plaintiff to show "that the defendant was at least negligent, in <u>publishing</u> a false and defamatory statement to another concerning the plaintiff.") (citations omitted) (emphasis added).

## IV. CONCLUSION

For reasons stated above and in the court's memorandum opinion granting Ingram's motion for summary judgment, (doc. 80), plaintiffs' claims against NCO fail as a matter of law, and NCO's motion for summary judgment is GRANTED.

Done this 7th day of May, 2010.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE