FILED
2011 Oct-03  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT



ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 29, 2011

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 10-14509-FF
Case Style: Roger Shuler, et al v. Ingram & Associates, et al
District Court Docket No: 2:08-cv-01238-AKK

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, each party bears their own costs on appeal.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Carol R. Lewis, FF at (404) 335-6179.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Nancy M. Gilman
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs

FILED

2011 OCT -3 P 12: 27

U.S. DISTRICT COURT
N.D. OF ALABAMA

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

| FILED |
| U.S. COURT OF APPEALS |
| ELEVENTH CIRCUIT |
| SEP 29, 2011 |
| JOHN LEY |
| CLERK |

No. 10-14509
Non-Argument Calendar

D.C. Docket No. 2:08-cv-01238-AKK

ROGER SHULER,
CAROL SHULER,

Plaintiffs-Appellants,

versus

INGRAM & ASSOCIATES,
NCO FINANCIAL SYSTEMS, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Alabama

(September 29, 2011)

Before MARCUS, WILSON and BLACK, Circuit Judges.

PER CURIAM:

Roger and Carol Shuler ("the Shulers"), proceeding pro se, appeal the district court's order granting the summary judgment motions of defendants Ingram & Associates ("Ingram") and NCO Financial Systems, Inc. ("NCO") on all claims raised in the Shulers's complaint as amended, which alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., and various torts under Alabama law.   On appeal, the Shulers argue that: (1) the district court procedurally erred by not holding a hearing before ruling on the summary judgment motions, granting summary judgment while discovery issues remained unresolved, and failing to consider evidence in the light most favorable to the Shulers; (2) the district court substantively erred in finding that the defendants did not violate the FDCPA, 15 U.S.C. §§ 1692g, 1692d(2), 1692d(5), 1692e and e(4)-(5), and 1692f; and (3) the district court erred in finding that the Shulers's Alabama tort law claims -- for fraud, invasion of privacy, defamation, and wanton failure to train and supervise employees -- failed.   After thorough review, we affirm.[1]

---

[1] As a threshold matter, we note that we are obligated to examine our own jurisdiction sua sponte. Finn v. Prudential-Bache Securities, Inc., 821 F.2d 581, 585 (11th Cir. 1987). Fed.R.App.P. 3(c)(1)(B) requires that a notice of appeal "designate the judgment, order, or part thereof being appealed." Ordinarily, the failure to abide by this requirement will preclude that appellate court from reviewing any judgment or order not so specified. McDougald v. Jenson, 786 F.2d 1465, 1474 (11th Cir. 1986).   However, when the "overriding intent was effectively to appeal" the original judgment, a notice of appeal stating that it appeals from an order on a tolling post-judgment motion must be construed as an appeal from the original judgment and not merely from the denial of the post-judgment motion. Kicklighter v. Nails by Jannee, Inc., 616 F.2d 734, 738 n.1 (5th Cir. 1980) (quotation omitted). (In Bonner v. City of Prichard, 661 F.2d 1206, 1209

2

We review <u>de novo</u> the district court's grant of summary judgment. <u>Holloman v. Mail-Well Corp.</u>, 443 F.3d 832, 836 (11th Cir. 2006). Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, presents no genuine issue of fact and compels judgment as a matter of law. <u>Id.</u> at 836-37; Fed.R.Civ.P. 56. "A party opposing a properly submitted motion for summary judgment may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial." <u>Eberhardt v. Waters</u>, 901 F.2d 1578, 1580 (11th Cir. 1990) (quotation and brackets omitted). Speculation or conjecture cannot create a genuine issue of material fact. <u>Cordoba v. Dillard's, Inc.</u>, 419 F.3d 1169, 1181 (11th Cir. 2005). Thus, summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). We may affirm a summary judgment "if there exists any adequate ground for doing

---

(11th Cir. 1981) (<u>en banc</u>), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981)).

Here, the Shulers's notice of appeal indicated that they only sought review of the district court's denial of their Rule 59(e) motion. Despite the Shulers's failure to abide by Fed.R.App.P. 3(c)(1)(B), we have jurisdiction to review the district court's summary judgment orders because we construe the Shulers's notice as an effective appeal from the summary judgment orders, given that the Shulers are proceeding <u>pro se</u> and clearly intended to appeal them. <u>See Kicklighter</u>, 616 F.2d at 738 n.1.

3

so, regardless of whether it is the one on which the district court relied." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1117 (11th Cir. 1993). "It is [also] well settled in this circuit that Rule 56(c) does not require an oral hearing." Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984).

The Supreme Court has held that where a summary judgment motion was not filed until one year after the action commenced and where the parties had conducted discovery, the respondent could make "no serious claim . . . that [it] was 'railroaded' by a premature motion for summary judgment." Celotex Corp., 477 U.S. at 326. "Any potential problem with such premature motions can be adequately dealt with under Rule 56(f)." Id. Rule 56(f) provides that "[i]f a party opposing the [summary judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken." Fed.R.Civ.P. 56(f)(2).[2] "The presence of [R]ule 56(f) shows that [an] appellant's argument that it is per se improper to grant summary judgment without providing the opponent an opportunity to conduct discovery is without merit."

---

[2] Subsequent to the 2010 amendments, which became effective after the entry of judgment in this case, this provision is now embodied by Fed.R.Civ.P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").

Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841, 844 (11th Cir. 1989). Because "[c]ourts cannot read minds, . . . 'the party opposing the motion for summary judgment bears the burden of calling to the district court's attention any outstanding discovery.'" Id. (quotation omitted).

First, we reject the Shulers's argument that the district court procedurally erred in granting summary judgment to the defendants. For starters, because Rule 56(c) does not require an oral hearing, the district court did not procedurally err in failing to hold a hearing. Nor were the Shulers railroaded by a premature summary judgment motion. As the record shows, the Shulers initially filed suit in July 2008, the discovery period closed on October 30, 2009, and both defendants filed summary judgment motions by November 30, 2009. The Shulers never sought a continuance pursuant to Fed.R.Civ.P. 56(f), the absence of which renders the Shulers's argument meritless. Although the Shulers footnoted in their counseled oppositions to the summary judgment motions that they had ongoing discovery issues with NCO and Ingram, these issues appeared to relate only to the alleged agency relationship between the defendants, a relationship the district court treated as true anyway.

In addition, we will not consider the Shulers's claim that the district court did not construe the evidence in the light most favorable to them because they failed to

specify in their brief when and how the district court failed to do so.[3]  In any event,

the district court used the correct summary judgment standard, explicitly stating on

---

[3] We recognize that "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Boxer X v. Harris, 437 F.3d 1107, 1110 (11th Cir. 2006) (quotation omitted). However, the leniency afforded pro se litigants does not give courts license to serve as de facto counsel or to rewrite an otherwise deficient pleading in order to sustain an action. GJR Inv., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds as recognized in, Randall v. Scott, 610 F.3d 701, 709 (11th Cir. 2010). We deem abandoned issues not briefed on appeal by a pro se litigant. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). Further, an issue is considered abandoned when "a party seeking to raise a claim or issue on appeal [fails to] plainly and prominently so indicate." United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003).

Further, "absent extraordinary circumstances, legal theories and arguments not raised squarely before the district court cannot be broached for the first time on appeal." Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009), cert. denied, 130 S.Ct. 1536 (2010). We will not decide an issue or argument not adequately presented to the district court, which may include a failure to cite supporting authority. Smith v. Sec'y, Dep't of Corr., 572 F.3d 1327, 1352 (11th Cir. 2009); Access Now, Inc. v. SW Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004). "In deciding issues on appeal we consider only evidence that was part of the record before the district court." Selman v. Cobb Cnty. Sch. Dist., 449 F.3d 1320, 1332 (11th Cir. 2006).

On appeal, not only have the Shulers abandoned the argument that the district court failed to construe the evidence in their favor, but they also have abandoned their § 1692e(4) claim because they failed to brief it fully; their claim that Ingram could not legally sell their house per § 1692e(5) because they provided this Court with no supporting legal authority that a debt collector is prohibited from suing a debtor and selling the debtor's house; their § 1692f claim because they failed to meaningfully argue it on appeal and to raise it sufficiently before the district court; their claim that Ingram falsely represented under Alabama law that it legally could sell their house because they failed to cite authority to the district court or this Court showing that Ingram could not pursue collection remedies against their house; their claim that Ingram invaded their privacy when it improperly contacted Mrs. Shuler, a non-party to the debt, improperly gathered information, and made an unlawful threat because they raised these arguments for the first time on appeal; and their defamation claim because they failed to meaningfully argue it on appeal and to raise it sufficiently before the district court. (And in any event, the Shulers's defamation claim is meritless since they admitted below that neither defendant reported their debt to a credit bureau.) Moreover, because the Shulers did not brief an argument on the district court's denial of their Rule 59(e) motion, they have abandoned this issue.

6

two occasions in each opinion that it construed the evidence of record in the light most favorable to the non-moving party -- the Shulers.

Next, we are unpersuaded by the Shulers's argument that the district court substantively erred in finding that the defendants did not violate various sections of the FDCPA, including 15 U.S.C. §§ 1692g, 1692d(2), 1692d(5), and 1692e(5). Under § 1692g, a debt collector must communicate to the debtor, either in the initial communication or within five days after the initial communication, information that includes the following: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; and (3) statements regarding the consumer's right to dispute the debt, obtain verification of the debt, or obtain the name and address of the original creditor. 15 U.S.C. § 1692g(a).

Here, the district court correctly found that Ingram complied with § 1692g(a). The record shows that, on July 9, 2007, the same day that Ingram first attempted telephone contact with Mr. Shuler, Ingram mailed him a document entitled "Instructions for Making Payment or Disputing the Debt," which fully complied with § 1692g(a). Notably, Mr. Shuler responded to this very document in order to dispute the debt. Moreover, the Shulers judicially admitted these facts because their opposition to Ingram's summary judgment motion did not controvert Ingram's twelfth

7

undisputed fact -- that Ingram mailed Mr. Shuler an initial demand letter containing the requisite information on July 9, 2007.[4]

Under § 1692d(2), a debt collector is prohibited from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[t]he use of obscene or profane language or language the natural consequence of which is to abuse the hearer." 15 U.S.C. § 1692d(2). This subsection "was meant to deter offensive language which is at least akin to profanity or obscenity . . . [and that] might encompass name-calling, racial or ethnic slurs, and other derogatory remarks which are similar in their offensiveness to obscene or profane remarks." Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1178 (11th Cir. 1985). Claims under § 1692d "should be viewed from the perspective of a consumer whose circumstances makes him relatively more susceptible to harassment, oppression, or abuse." Id. at 1179. A debt collector's simple warning that a lawsuit may cause a consumer "'embarrassment, inconvenience, and further expense' is a true statement . . . [and] does not create a tone of intimidation." Id. (quotation omitted). "Such consequences of a debt

---

[4] Further, we will not review Mrs. Shuler's deposition because the Shulers never submitted it to the district court. Indeed, the Shulers even stated that they did not submit the deposition because it was unnecessary to create genuine issues of material fact. Also, because the Shulers failed to file the deposition simultaneously with their oppositions to summary judgment, they waived their rights per the Uniform Initial Order entered by the district court on August 26, 2009.

collection [] lawsuit are so commonplace that even a consumer susceptible to harassment, oppression, or abuse would not have been harassed, oppressed, or abused by the statement in and of itself." Id. (emphasis in original).

As applied here, Ingram did not engage in abusive conduct or use abusive language. The transcripts of these calls show that Ingram's employees merely explained to Mr. Shuler the potential consequences that he faced if he failed to pay his debt and Ingram filed suit against him and obtained a favorable judgment -- namely, placing a lien on his property, selling the deed to his house, and garnishing up to 25% of his disposable income. Ingram's statements therefore involved "commonplace" consequences of a debt collection lawsuit, and the Shulers have not established otherwise. Moreover, even crediting the Shulers's allegations that Ingram's employees were "testy," "abusive," and "smart-alecky," the employees' conduct resulted from Mr. Shuler's persistent claims that they had to help him take on lawyers and judges in an unrelated matter. In fact, only Mr. Shuler used obscene language.

Under § 1692d(5), a debt collector is prohibited from "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). However, Ingram's five telephone calls to the Shulers, including one

9

successful contact with Mr. Shuler that lasted for less than five minutes and two voicemail messages, do not amount to repeated or continuous attempts to annoy, abuse, or harass the Shulers. Moreover, Ingram did not violate § 1692d(5) by calling Mr. Shuler after Mr. Shuler had told Ingram not to do so. As the record shows, Mr. Shuler effectively nullified this prior instruction when he subsequently called Ingram to speak about the debt, thereby giving Ingram a reasonable basis to call him again.

Under § 1692e, a debt collector is prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. We apply the "least-sophisticated consumer" standard to evaluate whether a debt collector's communication violates 15 U.S.C. § 1692e. See LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1193 (11th Cir. 2010).

It is also worth noting that "a party is bound by the admissions in his pleadings." Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 621 (11th Cir. 1983). "[J]udicial admissions are proof possessing the highest possible probative value . . . [and] are facts established not only beyond the need of evidence to prove them, but beyond the power of evidence to controvert them." Hill v. Fed. Trade Comm'n, 124 F.2d 104, 106 (5th Cir. 1941). A party cannot avoid the consequences of the acts or omissions of his voluntarily selected "lawyer-agent." Link v. Wabash R.R. Co., 370 U.S. 626, 633-34 (1962).

10

Here, the Shulers's false representation claim is without merit. The district court properly granted summary judgment in Ingram's favor because the Shulers admitted that facts 1 through 13 in Ingram's summary judgment motion were undisputed. Thus, the Shulers judicially admitted the facts that Mr. Shuler had a debt with American Express, that American Express placed the debt with NCO for collection, that NCO referred the past due debt to Ingram, a debt collector, and that American Express retained Ingram as legal counsel. In addition, the Shulers's related argument -- that they should not be held responsible for their former attorneys' admissions in their opposition brief -- is without merit because a litigant is generally bound by all acts and omissions of his attorney. See id.

Section 1692e also prohibits a debt collector from making a "threat to take any action . . . that is not intended to be taken." 15 U.S.C. § 1692e(5). A claim raised under § 1692e(5) "requires proof of a fact which amounts to a per se violation [and the] sophistication, or lack thereof, of the consumer is irrelevant to whether [the debt collector] threatened to take any action that was not intended to be taken." Jeter, 760 F.2d at 1175 (quotation, brackets and ellipses omitted).

In Jeter, we considered whether a debt collector falsely threatened to take legal action in the immediate or near future. Id. We determined that a jury could reasonably find that a debt collector's letters to a debtor that referenced a five-day

11

period preceding the recommendation of a lawsuit against the debtor were indicative of a threat to recommend legal action immediately upon the expiration of the five-day period or shortly thereafter if the alleged debt was not paid. Id. at 1176. Jeter also concluded that a genuine issue of fact existed as to whether the debt collector ever intended to recommend legal action against the debtor. Id. at 1177. We reasoned, in part, that the debt collector's "conclusory affidavit" that it indeed intended to take legal action was not dispositive, especially in light of the small percentage of its debt collection efforts that had resulted in suit. Id.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct. 1937, 1949 (2009). The complaint need not include detailed factual allegations, but must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The district court properly granted summary judgment in favor of defendants with respect to § 1692e(5). Even though Ingram never filed suit against Mr. Shuler, § 1692e contains no provision that filing a lawsuit is the only way for a debt collector to establish that it actually had intended to file a lawsuit. Moreover, not only was there a reasonable likelihood that Ingram, a lawyer and debt collector, would indeed

12

sue the Shulers, but the Shulers have not presented evidence to show that Ingram secretly never intended to sue or has only sued on rare occasions. Thus, the Shulers' speculation as to Ingram's underlying intentions was insufficient to raise a genuine issue of material fact.

We also reject the Shulers's argument that the district court erred in finding that the Shulers's Alabama tort law claims -- for fraud, invasion of privacy, and wanton failure to train and supervise employees -- failed. To establish a false misrepresentation (or fraud) claim under Ala. Code § 6-5-101, the plaintiff must show "(1) a false representation (2) concerning a material existing fact (3) relied upon by the plaintiff (4) who must be damaged as a proximate result." Cherokee Farms, Inc. v. Fireman's Fund Ins. Co., 526 So. 2d 871, 875 (Ala. 1988) (quotation omitted). In Bosarge Offshore, LLC v. Compass Bank, 943 So. 2d 782, 786-88 (Ala. 2006), the Alabama Supreme Court concluded that the customer did not detrimentally rely on the bank's allegedly fraudulent letter of credit issued to the customer for the customer's new business, because the customer had already entered into a new business arrangement before the bank issued the letter and presented no evidence of harm stemming from reliance on a misrepresentation. 943 So.2d at 786-88.

Here, the Shulers's fraud claim -- based on Ingram's statement that it was hired by American Express -- fails in light of their admission on summary judgment that

13

American Express retained Ingram as legal counsel, so the Shulers have conceded this fact and are bound. Moreover, mere consultation with a bankruptcy lawyer -- whom the Shulers did not retain -- does not amount to detrimental reliance on a creditor's claims. Further, the Shulers presented no specific facts concerning any anguish or distress that would raise a genuine issue for trial. In fact, Mr. Shuler testified that he was already taking medication for depression and anxiety prior to Ingram's debt collection efforts, and that his doctor did not increase his dosage on account of the debt issue.

As for the invasion of privacy claim, the Alabama Supreme Court has "recognized the right of a creditor to take reasonable action to pursue a debtor and collect a debt." Jacksonville State Bank v. Barnwell, 481 So.2d 863, 865 (Ala. 1985). However, when a creditor's actions "exceed the bounds of reasonableness," the debtor may bring a claim for invasion of privacy. Id. at 865-66 (finding, in part, that 28 to 35 phone calls to one's home and place of employment fall within the realm of a "systematic campaign of harassment"). In the debtor-creditor context, invasion of privacy has been characterized as "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." Id. at 865 (quotation omitted).

In this case, the district court properly found that Ingram did not invade the Shulers's privacy because Ingram had the right to make reasonable efforts to collect the debt and the single telephone conversation with Mrs. Shuler about payment arrangements and the legal consequences of not paying the debt did not exceed the bounds of reasonableness. Although Mrs. Shuler became hysterical during the call, the Shulers offered no specific facts showing that Ingram was attempting by harassment to coerce her into payment arrangements or to frighten her with the prospect of selling the Shulers's house. Thus, the Shulers failed to show how this conversation wrongfully would cause mental suffering or humiliation to a person of ordinary sensibilities.

Finally, a party alleging wanton defects in training and supervision must prove the underlying wrongful conduct of employees. See Voyager Ins. Cos. v. Whitson, 867 So.2d 1065, 1073 (Ala. 2003); Thrasher v. Ivan Leonard Chevrolet, Inc., 195 F.Supp.2d 1314, 1320 (N.D. Ala. 2002) ("[T]he plaintiff must establish that the allegedly incompetent employee committed a common-law, Alabama tort."). Alabama law defines "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3). "'Wanton supervision' requires that the employer wantonly disregard its agent's

15

incompetence." <u>Armstrong Bus. Servs., Inc. v. AmSouth Bank</u>, 817 So. 2d 665, 682 (Ala. 2001).

Here, the Shulers's wanton and reckless supervision and training claim fails as a matter of law because they have failed to establish that Ingram's employees committed any tort under Alabama law -- including fraud, invasion of privacy, or defamation -- as discussed above. Likewise, their argument that the district court deprived them from making the claim by foreclosing discovery is without merit, since, as we found above, the Shulers never sought a continuance to pursue discovery.

**AFFIRMED.**

16